```
 1              IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                       TAMPA DIVISION

 3

 4  UNITED STATES OF AMERICA,       )
                                    )
 5                  Plaintiff,      )
                                    )
 6                                  ) Case No.
            vs.                     ) 8:19-CR-00250-SCB-CPT-1
 7                                  )
                                    )
 8  SHACARA BRYANT,                 )
                                    )
 9                  Defendant.      )

10

11
    _____
12
                       SENTENCING HEARING
13       BEFORE THE HONORABLE ELIZABETH A. KOVACHEVICH
                  UNITED STATES SENIOR JUDGE
14
                     DECEMBER 20, 2019
15                      11:20 A.M.
                      TAMPA, FLORIDA
16  _____

17

18

19

20

21        Proceedings recorded by mechanical stenography,
    transcript produced using computer-aided transcription.
22  _____

23              DAVID J. COLLIER, RMR, CRR
               FEDERAL OFFICIAL COURT REPORTER
24           801 NORTH FLORIDA AVENUE, 7TH FLOOR
                  TAMPA, FLORIDA  33602
25
```

```
 1   APPEARANCES:

 2

 3   FOR THE GOVERNMENT:

 4

 5             Natalie Hirt Adams

 6             United States Attorney's Office

 7             400 N. Tampa Street, Suite 3200

 8             Tampa, Florida  33602

 9             (813) 274-6000

10

11

12   FOR THE DEFENDANT SHACARA BRYANT:

13

14             Nicole Valdes Hardin

15             Federal Public Defender's Office

16             400 N. Tampa Street, Suite 2700

17             Tampa, Florida  33602-4726

18             (813) 228-2715

19

20

21

22

23

24

25
```

```
 1                     P R O C E E D I N G S

 2                      –  –  –  o0o  –  –  –

 3            THE COURT:  Okay, everybody.  This is Case Number

 4   8:19-Criminal-250-T-17CPT, United States of America,

 5   represented by Assistant United States Attorney Natalie

 6   Adams, versus Shacara Bryant, represented by her attorney

 7   Assistant Federal Defender Nicole Hardin.

 8            Please bear with me.  I have to read the script.

 9            Shacara Bryant, on September 6, 2019 you entered a

10   plea of guilty to Count One of the indictment, charging you

11   with conspiracy to possess with intent to distribute and to

12   distribute cocaine and 28 grams or more of cocaine base, in

13   violation of Title 21, United States Code, Section 846,

14   841(b)(1)(B) and (b)(1)(C).  The Court previously accepted

15   your guilty plea and has adjudicated you guilty of that

16   offense.

17            It's the duty of the Court to address several

18   questions.  First, Ms. Bryant --

19            THE DEFENDANT:  Yes.

20            THE COURT:  -- have you had an opportunity to read

21   and discuss the presentence report prepared --

22            THE DEFENDANT:  Yes, ma'am.

23            THE COURT:  -- February 15, 2019 and then revised,

24   ma'am, on December 10, 2019 with your attorney, Ms. Hardin?

25            THE DEFENDANT:  Yes, ma'am.
```

1          THE COURT:  Ms. Hardin, you've been over those

2     documents with your client?

3          MS. HARDIN:  Yes, Your Honor.

4          THE COURT:  You've read them, Ms. Adams?

5          MS. ADAMS:  Yes, Your Honor.

6          THE COURT:  The Court notes there's no addendum in

7     the presentence report.

8          At the present time are there any objections as to

9     the factual statements and guideline calculations contained

10    in the presentence report?  Ms. Hardin?

11         MS. HARDIN:  No, Your Honor.

12         THE COURT:  Ms. Adams?

13         MS. ADAMS:  No, Your Honor.

14         THE COURT:  There being no objections to the

15    factual statements and guideline calculations contained in

16    the presentence report, the Court adopts those statements as

17    its findings of fact and determines that the advisory

18    guidelines are -- this is where we begin -- total offense

19    level 23, Criminal History Category V, 84 months to

20    105 months imprisonment, four years to five years supervised

21    release, restitution is not applicable, 20,000 to $5 million

22    fine, $100 special assessment, over which I have no control.

23         Do you know of any legal reason why this Court

24    should not now proceed with imposition of sentence?

25         Any legal reason?

1          MS. HARDIN:  No, Your Honor.

2          THE COURT:  Any legal reason?

3          MS. ADAMS:  No, Your Honor.

4          THE COURT:  Do you wish to make a statement or

5  present any information in mitigation of sentence?

6          Is there a Government motion?

7          MS. ADAMS:  There is not.

8          THE COURT:  One anticipated?

9          MS. ADAMS:  There is not.

10          THE COURT:  Go right ahead, Ms. Hardin.

11          MS. HARDIN:  I would ask to approach on this too

12  because I'm going to reference --

13          THE COURT:  Approach sidebar.  Come.

14          *(The following bench conference was held.)*

15          THE COURT:  Fire away.

16          MS. HARDIN:  She has a lot of sexual abuse by her

17  own father when she was a child.

18          THE COURT:  Right.

19          MS. HARDIN:  I don't want to just say that out

20  loud.

21          THE COURT:  I got that.

22          MS. HARDIN:  Okay.  So this is just for Court's

23  history.  As I've said, there was parental abuse, I think

24  from the age of eight, from her own father.  He gave her a

25  sexually transmitted disease.  He was prosecuted.  She was

```
 1   given to her mother.  She had to run away from that.  They
 2   found abuse with her mother.  It's awkward because her
 3   family is here, but to me -- I wanted you to consider her
 4   past.  She has made amends with people in her life.  They
 5   are in the courtroom.  Her mother would like to speak to you
 6   if you're open to it, but I also --
 7              THE COURT:  In open court?
 8              MS. HARDIN:  Yes.
 9              THE COURT:  Okay.  Sure.
10              MS. HARDIN:  I also just wanted to say that it's
11   well-documented the amount of abuse she suffered, and
12   despite -- and all of her criminal history started right at
13   the point of where the sexual abuse was.
14              THE COURT:  I have that.  I'm running into an
15   awful lot of documented, substantiated child abuse --
16              MS. HARDIN:  Yes.
17              THE COURT:  -- internally within families, and
18   we're not talking about any type of ethnic -- particular
19   ethnic background.  I mean, it's just rampant.  An awful lot
20   of the people that we're getting now that are criminals are
21   like almost wild in their -- the last man, fleeing,
22   desperate to escape everything, you know.  It's -- I'm
23   seeing more of it, more than ever before.  Boy.  That's
24   another topic.
25              MS. HARDIN:  Trauma changes your brain when you're
```

1   young, and I think that we're going to continue to see

2   people --

3            THE COURT:  I think we're going to see a lot more

4   of it.

5            MS. HARDIN:  Right.

6            THE COURT:  Which is going to be a real factor for

7   concern, in a lot of different ways.

8            Keep going, Nicole.

9            MS. HARDIN:  The other thing I wanted to say is

10   she did truthfully debrief and she signed a plea agreement

11   and entered a plea, which did affect the co-defendant,

12   entered a plea, didn't get a 5K, but I want you to consider

13   that, but it is her cousin, so it's caused a rift in her

14   family that she signed that plea agreement, and I didn't

15   want to say that in open court, but I did want you to know

16   that.

17            THE COURT:  What are you going to ask for in a

18   variance?

19            MS. HARDIN:  I'm just asking that you give her the

20   least you can give her, which is the five years, because I

21   don't think you can give her anything less, I think that the

22   Government agrees, but I don't think you can give her any

23   less than five, but at least give her the five.  She's not

24   going to be able to get RDAP relief because her boyfriend's

25   firearm was found so, I mean --

1          THE COURT:  Well, what happens after she gets out

2    of prison and what strength of character she's got to move

3    somewhere else is going to be the big thing.  We'll see

4    where that goes.

5          Nicole -- I mean, Natalie, what's your reaction to

6    that?

7          MS. ADAMS:  We're asking for a guideline sentence.

8    There is no question that she has substantial abuse, sexual

9    abuse, between the ages of 11 and 14.  All right.  That was

10   two dozen years ago, 24 years ago.  Maybe she gets a pass on

11   her first arrest, her first two, five, ten arrests.  We're

12   at 37 arrests for 41 offenses.

13         THE COURT:  Yeah.

14         MS. ADAMS:  There is a point at which, look,

15   I mean, there has to be accountability or we cannot protect

16   the community.  We are not recommending a 5K.  We do note

17   she was the first to plead, no question about it, we do note

18   that her co-defendant pled after she did, but we'll also

19   note that her pretrial release was revoked because she was

20   sending texts to expose and harass a confidential informant,

21   including pictures of his children, so we feel that she's

22   lucky not to have gotten an obstruction enhancement or even

23   a superseding indictment.  I do understand that her plea may

24   have been helpful in the defendant pleading, but in our view

25   that is completely outweighed by affirmative obstructive and

1    threatening conduct.

2            MS. HARDIN:  She did truthfully debrief as well

3    after that, but I don't think any of it has been actioned

4    on.

5            THE COURT:  Well, I have got the Government's

6    picture and I think you're both reasonable ladies

7    representing your profession and we'll just see where all

8    this is going to lead us.

9            Do you anticipate she has anything to offer in the

10   future?

11           MS. HARDIN:  She gave a lot of information at her

12   proffer.  I just don't know that they're going to do

13   anything with it.  I don't know where it's at.  She gave

14   information about men accessing fentanyl and shipping it on

15   the dark web, she gave fraud information, tax fraud, she

16   gave a lot of information, but I haven't heard any follow-up

17   to it.

18           MS. ADAMS:  I think there is one defendant from

19   whom her information might be actionable in the future, but

20   of course we've got to weigh it against using her as a

21   witness after she affirmatively obstructed and harassed a

22   witness.  I mean, that's Jencks, that's Giglio.  There's a

23   problem there, but, you know, I don't think it's out of the

24   question that we would find a way there sometime in the

25   future.

1          THE COURT:  Well, I always get very concerned

2   about future utilization of cooperators in that witness box

3   because it's no good to let them believe that they're going

4   to get a benefit and because of their previous conduct and

5   their -- their difficulty in front of a jury meeting the

6   challenge of a defense attorney who is going to lay the

7   foundation to impeach them and question their credibility

8   and potential perjury and things of that nature, that makes

9   being a cooperating witness very, very difficult for

10  everybody, for the Court, for the prosecution and for the

11  defense attorney representing them.

12          MS. HARDIN:  I do think she's given all the

13  information she has.  I think she was honest in her proffer.

14  I think she's just got to break out of the cycle.  She's

15  with an abusive man.  The supplier she had in this case was

16  her boyfriend, who was arrested for beating her senseless

17  and choking her, so it's just she's in a bad cycle and --

18          THE COURT:  Yeah.

19          MS. HARDIN:  -- I'm hopeful that she can get out

20  of it.  She does overall love her children, that's all she

21  talks about, so I'm hopeful that will carry her out of this

22  cycle that she's in.

23          THE COURT:  She's got to break free.

24          MS. HARDIN:  Right.

25          THE COURT:  In more ways than one.

1          MS. HARDIN:  I agree.

2          THE COURT:  To survive and have to, unfortunately,

3   stand on her own two feet somewhere else and be supervised

4   there in the future.

5          MS. HARDIN:  She wants to be placed as close as

6   possible, because her children are here.

7          THE COURT:  Not going to do any good to keep her

8   here for a temporary period of time over the holidays.

9          MS. ADAMS:  No.

10         MS. HARDIN:  She would love to see her children

11  over the holidays.

12         THE COURT:  No, but, Natalie, I'm trying to figure

13  out whether or not there's anything that could come up from

14  the Government that a succeeding judge from me will be able

15  to handle.  You know, I'm doing 90 days on a man and he's

16  staying in Pinellas County Jail.

17         MS. ADAMS:  I can say that, you know, I do not

18  anticipate there will be any further motion, but I'm not

19  ruling it out, you know, but that's all I can really -- all

20  the hope I can give.

21         THE COURT:  Well, how soon would you anticipate

22  that something might be into fruition?

23         MS. HARDIN:  I don't know if the agent is going to

24  do anything with the information.

25         THE COURT:  Natalie?

1          MS. HARDIN:  I'm just -- I hear her give it but

2     I don't know what happens to it after that point.

3          THE COURT:  And you haven't got any relationship

4     with the agents, have you, can you tell me?

5          MS. ADAMS:  I don't think that there's anything

6     forthcoming on -- I do think, you know, if one of these

7     people gets involved in something sticky we might come to

8     her and say, hey, here is your chance, you can give some

9     background on this person, but I don't see anything that she

10    has right now precipitating any event.

11         THE COURT:  Well, see, that's why I'm asking

12    Natalie, and I'm not trying to put you or the Government on

13    the spot, but I kept the other young man here because

14    I really think in three months with -- I don't know what --

15    you just nag Greg to pieces.

16         MS. HARDIN:  I have been nagging him, but I will

17    continue.

18         THE COURT:  And I don't think you have to nag

19    Natalie.  She will do it.  If this looks like it would be

20    beneficial, I would keep her, what, for 60 days.

21         MS. ADAMS:  I am happy to arrange a proffer with a

22    different -- maybe a different agent with her in, you know,

23    January to see if we can do --

24         THE COURT:  How about if I keep her here at least

25    for 60 days?

1          MS. ADAMS:  I would be -- I would be happy to

2   arrange a proffer that would make that make sense.

3          THE COURT:  Okay.  All right.  Okay.

4   *(End of bench conference; proceedings resume in open court.)*

5          MS. HARDIN:  Your Honor, would you like me to have

6   the mother --

7          THE COURT:  Yes, up at the podium.

8          Mr. Bailiff, if you'll assist.

9          Whoever is going to speak, let's have them line up

10  at the podium.

11         We're going to have two people?  Okay.  That's

12  fine.

13         MS. HARDIN:  No, that's my investigator.  She's

14  bringing her up.

15         THE COURT:  That's fine.  Mr. Bailiff, if you'll

16  assist the lady at the podium.

17         All right.  Yes, ma'am.  Please state your name

18  for the record.

19         THE WITNESS:  Latrice Bryant.  I'm Shacara's mom.

20         THE COURT:  Okay.  And spell your last name.

21         THE WITNESS:  B-R-Y-A-N-T.

22         THE COURT:  Okay.  Fine.

23         Now, speak up loudly and clearly.  This gentleman

24  has got to hear every word you're saying.

25         THE WITNESS:  Okay.  I just come today just to ask

1   for leniency for my daughter.  She's been through a lot.

2   Bad things happened to her growing up, and I just blame

3   myself for some of it, not being there when she needed me,

4   and she just took the wrong road.  We were just starting to

5   get our relationship back together.  And she do have two

6   small kids that I now have custody of, and I just want her

7   to be able to get out and be a great mother, which she

8   already was to her little kids, and have some time,

9   you know, to watch them grow up.

10           THE COURT:  Okeydoke.  Thank you very much, ma'am.

11           THE WITNESS:  Thank you.

12           THE COURT:  Okeydoke.

13           All right.  Anybody else?  No?  Okay.

14           MS. HARDIN:  No.

15           THE COURT:  Go right ahead.

16           MS. HARDIN:  As far as 3553, additional factors,

17   I did want to address her criminal history.

18           I know that she has a lot -- certainly her

19   juvenile record started at a very certain point, which we

20   discussed, and then in her adult history there is a high

21   number of arrests, but as I noted, 67 percent are related to

22   driving with a suspended license or without a valid driver's

23   license, and a lot of the criminal history points are for

24   traffic offenses, essentially misdemeanor or felony by

25   virtue of the fact that she had prior driving charges.

1    There's six criminal history points just for driving without

2    a license, a valid license; and there's one point assessed

3    for possessing cannabis oil, which two weeks after that

4    arrest became legal in the State of Florida and was no

5    longer a crime.  So under 3553, what we've already argued,

6    we would argue that her Criminal History Category V is

7    over-representative based on the actual conduct, which is

8    mostly -- two-thirds traffic violations and one of which is

9    no longer a crime in the State of Florida.

10           We are asking for the five years, which is the

11   least that this Court can give, and I think that is far --

12   that is a very sufficient sentence.  And then in the

13   supervised release after we would ask for psychological

14   counseling.  We did have her see a counselor, and she's

15   recommended follow-up treatment for her, as well as any

16   substance abuse treatment.

17           THE COURT:  Okay.

18           MS. HARDIN:  She'd like to be housed as close as

19   possible to her children.

20           THE COURT:  Okay.  In Pinellas County.

21           MS. HARDIN:  Yes, Your Honor, through the

22   holidays, but even in BOP, the closest possible place.

23           THE COURT:  Okay.  All right.  Now, when do you

24   want her to speak, now or later?

25           MS. HARDIN:  She can speak now.

1          THE COURT:  Okay.  Go right ahead, ma'am.

2          THE DEFENDANT:  I just want to apologize to my

3    kids and my family.  My kids --

4          THE COURT:  Make sure they can hear you.

5          THE DEFENDANT:  Do I turn to them?

6          I just want to apologize to my kids and my family,

7    especially my children, for taking them through this.

8    I take full responsibility for everything that I did.

9    I just ask that, you know, you have sympathy for me and

10   sentence me as less as you could so I can get back to my

11   kids.

12         THE COURT:  Okay.  All right.

13         What is Probation's position, ma'am?

14         PROBATION:  I have nothing to add, Your Honor.

15         THE COURT:  Okay.  Fine.  Thank you.

16         The Government, in aggravation or mitigation?

17         MS. ADAMS:  The United States is asking for

18   84 months in this case.  We are asking for the low end

19   because we recognize that there are mitigating factors, no

20   question, in the defendant's history, no question at all.

21   We do not think that her scoring is over-represented.  As

22   I mentioned before, she has 37 arrests for 41 offenses and

23   only about a quarter of those offenses received any score at

24   all, one quarter received any score, and so the idea that

25   somehow that over-represents I think is not quite right.

1          You know, a lot of her offenses certainly were in
2    her youth, but they were still pretty considerable and they
3    still had victims:  Aggravated battery, age 14; battery, age
4    13 and 14; age 14, punching her eight month pregnant mother
5    repeatedly in the head.  She's got throwing a deadly missile
6    into a building.  Nine batteries.  Nine batteries arrests.
7    So while these are old, they aren't invisible.  I mean,
8    they're real, they happened, and she's continued to get in
9    trouble essentially every year since then.

10         The nature and circumstances of this offense are
11   significant.  These were not rookie quantities of drugs.
12   Count One, she sells 28 grams of crack cocaine, $1,100 worth
13   of crack cocaine, one deal.  Count Three, almost 50 grams of
14   cocaine for $3,500.  Count Four, 19 grams of crack and
15   another ounce of cocaine, $2,300.  She was not charged
16   with -- it is not reflected in the indictment -- the ounce
17   of cocaine, the firearms, the scales that were found at the
18   search warrant on her house.  She's admitted she is a drug
19   dealer with multiple drug suppliers.

20         You know, she has talked about the difficulty
21   experienced by children whose parents are drug addicted, and
22   yet we should think about that as a reason to give her a
23   substantial sentence in protecting the community.  She is
24   pouring that exact same poison into the community to ruin
25   and traumatize other childhoods, other children.

1      She's talked about and I have no reason to
2    question that she loves her children, and that is to her
3    credit and is entirely credible.  That said, a lot of people
4    love their children, including the people whose children are
5    using these drugs that she's selling, including the
6    confidential informant whose children she published as a
7    means of retaliation for cooperating with the United States
8    in this case.
9          So, you know, it's about more than just the
10   defendant's children in this case, it's about the community,
11   and although she's expressing remorse to her children and
12   particularly for being away from them, it's not terribly
13   credible that she has tremendous remorse when she actively
14   attempted to obstruct and retaliate against people who were
15   trying to hold her accountable for her conduct.
16         So we are not asking for 105 months.  We are not
17   asking for an obstruction variance.  We are not asking for
18   anything more than the guidelines here.  We are asking for
19   the low end, and that is 84 months.
20             THE COURT:  Okay.  Rebuttal.
21             MS. HARDIN:  Yes, Your Honor.
22         I think she's made mention of the juvenile record,
23   which you can -- you can pinpoint the beginning of that
24   juvenile record to the DCF records and what was going on,
25   and if anything, since she's become an adult, it's

1    deescalated down to mostly traffic offenses.

2         This is her first drug sale charge that she's had,

3    despite all those arrests, and I think under 3553, history

4    and characteristics, this is, outside of capital work, one

5    of the worst histories I've seen since.  If I came into the

6    Federal system with what she's experienced and the fact that

7    she's still coming out of it with optimism that she can

8    change her patterns I think is a very good sign, and she's

9    willing to work for it, and I think a sentence at the

10   minimum mandatory is more than enough to deter her from

11   future conduct.

12        THE COURT:  Okeydoke.  All right.  Thank you very

13   much, both of you.  Okay.

14        Ma'am, you've been employed at different

15   occupations, and I just was trying to doublecheck -- I've

16   seen the medical here.  Did you get your general equivalency

17   diploma?

18        THE DEFENDANT:  No.

19        THE COURT:  So you don't have a high school

20   diploma yet?

21        THE DEFENDANT:  No, ma'am.

22        THE COURT:  I'm just trying to doublecheck.  I was

23   trying to -- I was looking at the other things.  I was

24   looking at the criminal history record, and I started to

25   look at that and refresh my recollection again.

1              Here we go.  Right.

2              Largo Middle School, completed the ninth grade,

3  et cetera, et cetera.  So you just got through the ninth

4  grade, right?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Okay.  All right.  I'll take care of

7  that.

8              What do you want to try to study when you're in

9  prison?  What occupation do you think you would enjoy

10 training in?

11             Now, you worked at KFC, and a lot of people work

12 at restaurants.  Do you like the culinary arts field, or

13 would you like to try to study something else?

14             THE DEFENDANT:  I like the culinary arts field.

15 I also looked up fashion design.

16             THE COURT:  And you like fashion design too?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  That's a highly competitive

19 occupation.  I'll put down a request for that, but I'm going

20 to put the culinary arts first, because, let me tell you, if

21 you're good at culinary arts and you can learn even to

22 become a cook, work in a restaurant, maybe some day own your

23 own restaurant --

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  -- you'd be surprised how much that

1   would help you and your children.  I know a family very well

2   where mother, father, the kids clean up, after they're in

3   school, clean up the restaurant, good for all of them, learn

4   how to deal with the public, learn how to keep track of the

5   money and how to buy inventory and how to run the

6   restaurant.  It's a family operation.  Best thing in the

7   world for the kids, as well as mom and dad.

8           Now, you can still aspire to do that.  You hear

9   what I'm telling you?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  And perhaps relocation where nobody

12   knows you and getting a fresh start is what you need.

13          THE DEFENDANT:  Yes.

14          THE COURT:  Have I heard from everybody?

15          Yes?

16          Yes?

17          MS. ADAMS:  Yes.

18          THE COURT:  Probation?

19          The Court having asked the defendant why judgment

20   should not now be pronounced and after hearing the

21   defendant's response, the Court having found no cause to the

22   contrary, the parties having made statements on their behalf

23   or having waived the opportunity to do so, the Court having

24   reviewed the presentence report and the advisory guidelines,

25   pursuant to Title 18, United States Code, Section 3551 and

1   3553, it's the judgment of the Court that the defendant,

2   Shacara Candace Bryant, is hereby committed to the custody

3   of the Bureau of Prisons to be imprisoned for a term of

4   84 months.  Credit for time served.

5           Upon release from imprisonment you shall serve a

6   four year term of supervised release.  While on supervised

7   release you shall comply with the mandatory and standard

8   conditions adopted by the Court in the Middle District of

9   Florida.  In addition, you shall comply with the following

10  special conditions.

11          One, you shall participate in a substance abuse

12  program, outpatient and/or inpatient, and follow the

13  probation officer's instructions regarding the

14  implementation of this Court directive.  Further, you shall

15  contribute to the costs of these services, not to exceed an

16  amount determined reasonable by the Probation Office's

17  sliding scale for substance abuse treatment services.

18  During and upon completion of this program you're directed

19  to submit to random drug testing.

20          Number two, you shall participate in a mental

21  health treatment program, outpatient and/or inpatient,

22  follow the probation officer's instructions regarding the

23  implementation of this Court directive.  Further, you shall

24  contribute to the costs of these services, not to exceed an

25  amount determined reasonable by the probation office's

1    sliding scale for mental health treatment services.

2          Three, you shall submit to a search of your

3    person, residence, place of business, any storage units

4    under your control, computer or vehicle, conducted by the

5    United States Probation Officer at a reasonable time and in

6    a reasonable manner based upon reasonable suspicion of

7    contraband or evidence of a violation of a condition of

8    release.  You shall inform any other residents that the

9    premises may be subject to a search pursuant to this

10   condition.  Failure to submit to a search may be grounds for

11   revocation.

12         Having been convicted of a qualifying felony, you

13   must cooperate in the collection of DNA as directed by the

14   probation officer.

15         You must refrain from any unlawful use of a

16   controlled substance.  You must submit to one drug test

17   within 15 days of placement on supervision and at least two

18   periodic drug tests thereafter as directed by the probation

19   officer.  You must submit to random drug testing, not to

20   exceed two tests per week.

21         Based on the financial status of the defendant,

22   the Court waives imposition of a fine.  It is further

23   ordered that the defendant shall pay the United States a

24   special assessment of $100, which shall be due immediately.

25   I have no control over that.

1          After considering the advisory sentencing

2    guidelines and all of the factors identified in Title 18,

3    United States Code, Section 3553(a)(1) through (7), the

4    Court determines that the sentence as prescribed is

5    sufficient but not greater than necessary to comply with the

6    statutory purposes of sentencing.

7          The Court, having accepted the plea agreement, is

8    satisfied that the agreement adequately reflects the

9    seriousness of the actual offense behavior.  Accepting the

10   plea agreement will not undermine the statutory purposes of

11   sentencing.

12          I don't think I made a notation, but the motion

13   for a variance is denied.

14          Yeah, I did make it denied.  I think I put it on

15   the record.

16          I accepted the plea agreement.  It adequately

17   reflects the seriousness of the actual offense behavior,

18   won't undermine the statutory purposes of sentencing.

19          Under the plea agreement the defendant entered a

20   guilty plea to Count One in return for dismissal of

21   Counts Two, Three and Four.  In accordance with the

22   plea agreement, it's ordered that Counts Two, Three and Four

23   of the indictment be dismissed.

24          The Court having pronounced sentence, does counsel

25   for the defendant or Government have any objections to the

1    sentence or the manner in which the Court pronounced

2    sentence, other than those previously stated for the record?

3          Ms. Hardin?

4          MS. HARDIN:  We object to it being substantially

5    unreasonable in light of the mitigation.

6          THE COURT:  Noted for the record.

7          The Court took all factors into consideration, the

8    arguments of the Government, your arguments, the seriousness

9    of the circumstances, including criminal history of the

10   defendant, conduct of the defendant, age of the defendant,

11   she's older, should know better, et cetera, and the

12   Government's argument with regard to that, which was very

13   well done.  So your objection is overruled.

14         Any objections from the Government?

15         MS. ADAMS:  No, Your Honor.

16         THE COURT:  Okay.  Now, wait a minute here.

17         Now, defendant is hereby remanded to the custody

18   of the U.S. Marshal to await designation by the Bureau of

19   Prisons; however, defendant is to remain in the Pinellas --

20   that's the one you want, right?

21         MS. HARDIN:  Yes, Your Honor.

22         THE COURT:  Pinellas County facility until

23   transport to Bureau of Prisons at the designated facility

24   on -- I'm going to give enough time here for this to be

25   done -- February 20, on Thursday, February 20th, 2020.

1          Okay.  So that gives enough time for what we've

2   discussed, ladies and gentlemen, okay, and provides for the

3   defendant to be close here for the holidays.

4          All right.  Now, where is the rest here?

5          That's my appeal.

6          To the extent permitted by the plea agreement, you

7   have the right of appeal from the judgment and sentence

8   within 14 days from the entry of the judgment.  Failure to

9   appeal within the 14 day period shall be a waiver of your

10  right to appeal.  The Government may file an appeal from

11  this sentence.  You're also advised that you're entitled to

12  assistance of counsel in taking an appeal.  If unable to

13  afford a lawyer, one will be provided for you.  If unable to

14  afford the filing fee, the Clerk of the Court will be

15  directed to accept the notice of appeal without such fee.

16         First choice, I assume, would be Coleman, the camp

17  at Coleman?

18         MS. HARDIN:  Coleman.

19         THE COURT:  Okay.  Women's camp, Coleman, Florida.

20         What's your second choice?

21         MS. HARDIN:  I think the second closest is

22  Tallahassee.

23         THE COURT:  You want Tallahassee?

24         MS. HARDIN:  Yes.  That's the only other one

25  nearby.

1          THE COURT:  Tallahassee, Florida.  All right.

2    Number one -- let me get that medical thing.

3          Number one, medical exam for necessary medication

4    for pre-existing conditions and allergies to certain drugs.

5    So I'll just phrase it like that and then we'll let them do

6    the examination.

7          Number 2, provide all necessary elementary and all

8    secondary education.

9          Now, let me stop there for a second.

10         Are you good at math?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  So you can add, divide, subtract?

13         THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  You're good at that?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Okay.  What about being able to write?

17   Do you write well, read, write?

18         THE DEFENDANT:  No, that's my worst subject.

19         THE COURT:  That's your worst subject?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  Okay.  That's what I needed.

22         Provide all elementary and all secondary

23   education, particularly reading, writing and speaking

24   English language.  Then procure GED.

25         Now, you got to get through that first, then they

1   let you go into the vocational, so don't waste a minute.

2   You got to get through all this preliminary education you

3   don't have.  And don't be reluctant to tell them, because

4   this is the one time you're going to get the education, you

5   concentrate on working on it hard and just don't slough it

6   off, make sure you know what's going on, because that's the

7   only time you're going to get it for the rest of your life,

8   okay?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  All right.  Number three, vocational

11  education in all culinary arts, cooking, chef training --

12  cooking, chef training, all aspects of baking, et cetera.

13  Also education in business management of restaurant and

14  related skills, including computers, if available, fashion

15  design training.  I left one thing out at the top.  Where

16  are we?  Three -- okay.  Those will get renumbered.

17          After the medical exam, number two, RDAP, 500 hour

18  program for substance abuse and alcohol.  Okay.

19          Then the next one on the education is number

20  three.  The vocational is on four.

21          Now, what did I leave out, Nicole?

22          MS. HARDIN:  I just -- I don't believe she's going

23  to be able to get RDAP because the boyfriend's firearm was

24  in the residence.

25          THE COURT:  Well --

1          MS. HARDIN:  My understanding is they won't --

2          THE COURT:  If they won't put her in that they got

3    to get her into a substance abuse program for the alcohol,

4    AA type program, and then the drug abuse programs, even if

5    they can't get her into RDAP.  I understand, okay?

6          All right.  Now, what else did I leave out?

7    Nothing?

8          Oh, yeah.  Unicor for the children.  Okay.

9          All right.  Number one is Unicor, to send support

10   for minor children, number two is a medical exam, number

11   three is the substance abuse, number four is the education,

12   and number five is the vocational training.

13         Thank you, Madam Clerk.

14         Now, listen to me.  Look at me for a second.

15         Hopefully you're going to be able to support your

16   children.

17         Number two, hopefully you're going to have the

18   medical exam, because you need to have whatever is

19   appropriate medication for you to have for your own personal

20   health and care, because you don't want to let a bad

21   situation get worse, especially in prison.

22         Number three, you got to have substance abuse for

23   both the drugs and the alcohol.

24         Number four, you've got to go back and not waste a

25   moment in getting all your elementary and getting all your

1   other education, okay?  Are you with me?

2            THE DEFENDANT:  (Nodding head yes.)

3            THE COURT:  And on this vocational, I'm trying to

4   have you have an intensive program in the culinary arts,

5   because you have to learn how to do it and that takes time,

6   and you have to learn how to -- it's a skill.  And the same

7   thing is true on the fashion design, if that's available.

8   I've recommended it for you, okay?

9            Now, just as with the substance abuse -- now,

10  listen to me.  You're at your present age in your 30s.

11  You're going to get this behind you.  There may be benefits

12  that you're going to receive even before you leave Pinellas

13  County, or in the not-to-distant future after that, so look

14  upon things as positive.  What you have done has not been

15  wasted.  Do you hear what I'm telling you?  That's why

16  you're staying here locally, okay?

17           You've got a bad record.  The previous person

18  I sentenced has a bad record.  He had a bad childhood,

19  you've had a bad childhood, but you can't keep living --

20  you've got to get beyond that.  He's got to go to a

21  different place and you've got to go to a different place in

22  your life to get away from your background, make a fresh

23  start for you and your kids.  He's got to do the same thing.

24           I tell you this because you're not alone.  Other

25  people such as yourself are similarly situated.  It just

1   didn't happen to you and it just didn't happen to him, and

2   I've seen both of you this morning, okay?  Now, you each got

3   to make it, and I'm trying to be thoughtful with regard to

4   both of you.  I really truly wish you well.

5           Anything else from Probation?

6           PROBATION:  Nothing else.

7           THE COURT:  The Government?

8           MS. ADAMS:  No, Your Honor.

9           THE COURT:  Defense?

10          MS. HARDIN:  No, Your Honor.

11          THE COURT:  And follow through on that, Nicole,

12  okay?

13          MS. HARDIN:  I will.

14          THE COURT:  Merry Christmas.  You're at least

15  going to be home with your kids.

16                  - - - - -

17          (Proceedings concluded at 12:02 p.m.)

18                  - - - - -

19

20

21

22

23

24

25

1        C E R T I F I C A T E

2

3           This is to certify that the foregoing transcript

4    of proceedings taken in a sentencing hearing in the United

5    States District Court is a true and accurate transcript of

6    the proceedings taken by me in machine shorthand and

7    transcribed by computer under my supervision, this the 6th

8    day of January, 2020.

9

10

11                                    /S/ DAVID J. COLLIER

12

13                            DAVID J. COLLIER

14                            OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25